UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JEHU HAND,

  Plaintiff

v.

SECURITIES AND EXCHANGE
COMMISSION,

  Defendant.

Case: 1:20-cv-03691
Assigned To : Unassigned
Assign. Date : 12/14/2020
Description: FOIA/Privacy Act (I-DECK)

COMPLAINT

FREEDOM OF INFORMATION ACT
5 U.S.C. 552(a)(4)(B)

Application to Proceed in Forma Pauperis Filed Separately

## PARTIES AND JURISDICTION

Plaintiff Jehu Hand ("Plaintiff") a federal prisoner in pro se and in forma pauperis, files this complaint pursuant to 5 U.S.C. 552(a)(4)(B) and the Freedom of Information Act ("FOIA") against the United States Securities and Exchange Commission (the "Defendant" or the "Commission"). This District has jurisdiction because the provisions of FOIA provide that a Federal agency may always be sued in this District.



RECEIVED Mail Room DEC 14 2020 Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

1

CLAIM FOR RELIEF

Plaintiff requested information under FOIA via letter dated February 29, 2020, addressed to the Commission. The Commission acknowledged that it had received the request on March 3, 2020, assigning file number 2020-00058-FOIA. The Commission requested that Plaintiff provide first party identification statement with a copy of photo identification. Plaintiff provided the requested identification statement and a copy of his passport, in a letter dated March 19, 2020. Since then, the Commission has provided no further response. Plaintiff notes that under 552(a)(4)(B), the burden is on the agency to justify non-disclosure.

Plaintiff's place of incarceration does not provide prisoners access to a law library, typewriters or copy machines. Therefore, Plaintiff is unable to provide copies of the correspondence between him and the Commission. He sets forth the text of his February 29, 2020 request below:

"This request is made under the Freedom of Information Act and the Privacy Act"

2

"My request is based upon an inquiry/investigation and the resulting civil enforcement action by the Boston Regional Office of the Commission of Natural Blue Resources and Joseph Corazzi, James "Jimmy" Cohen, Toney Anaya and other individuals. I provided documents and testimony in an oral deposition to the Commission, and I also provided electronic documents to the Commission through FINRA, related to that matter."

"The documents that I request, including those in electronic or paper form, are as follows:

1. The identities of all Commission staff who participated in the investigation/inquiry and/or enforcement action.

2. Any communication between the individuals named in response to item 1 and either of Andrew Polid or Martin Healey with respect to the undersigned or my testimony or documents provided to the Commission.

3. Any internal investigation or inquiry with respect to the loss by FINRA or the Commission of the audio recording I made of James Cohen or others at the time of my resignation from Natural Blue Resources in (I believe) 2011 and

3

transmitted to FINRA at that time. In order to clarify this request I inform the Commission that when I was testifying before the staff in the Miami Regional Office as to the Natural Blue matter, I brought the CD with the audio recording with me, and I was informed that the Commission had no no knowledge of it nor that I had previously sent it to FINRA.

4. Any document related to the investigation of the undersigned with respect to the Natural Blue matter, including notes memoranda, regarding my role or culpability in the matter, including communications with FINRA."

BACKGROUND FOR REQUEST

By 2010, Plaintiff had been practicing securities law for 26 years. He was also self-taught in financial accounting. He was asked by the then-CEO of Natural Blue Resources, a small public company traded on the over-the-counter market, to be Natural Blue's Chief Financial Officer and corporate secretary. The CEO's name was Toney Anaya. Anaya had been governor of New Mexico, and Paul Pelosi, son of Nancy Pelosi, was a founder of Natural Blue.

By 2011, Anaya had resigned and another individual, who lived near Boston and whose name Plaintiff can not recall at this time, had become CEO and one of three directors. The other two directors, Braunstein and Montalvo (?) were not officers or shareholders. They were "independent." The CEO asked Plaintiff to take minutes of a board meeting scheduled to be held via conference call. Plaintiff set up the conference call. The provider offered a service under which conference calls would be recorded if desired.

The conference call proceeded as scheduled. Other than Plaintiff and the three directors, no other persons identified themselves on the call. Plaintiff asked if all persons present consented to recording of the call. All assented.

The two independent directors proceeded to remove the CEO. The CEO then immediately resigned as a director. One of the outside directors was elected as the new CEO. Plaintiff was tasked to prepare an 8-K reflecting the change in management. The entire meeting occupied about 15 minutes.

Plaintiff received an email from the call provider alerting him that the recording of the call was ready. He reviewed the recording. To his

5

surprise, the recording continued after Plaintiff had left the recording and the end of the meeting. An ex-felon named James "Jimmy" Cohen started speaking to the outside directors. Apparently, Cohen had been secretly listening in. The three men continued talking a long time. The subject concerned the future stock fraud that the three men were going to perpetrate with Joseph Corozzi, who had been barred from serving as an officer or director of a public company.

Alarmed, Plaintiff discussed the recording with the recently-resigning CEO and Toney Anaya, and with corporate counsel. The former CEOs acknowledged that Cohen and Corozzi secretly controlled Natural Blue. Plaintiff resigned and filed his resignation in an 8-K. He wanted no part of any fraud. He wanted to report the fraud.

Plaintiff knew that if he merely filed an enforcement complaint with the Commission, it might be weeks or months before action could be taken. He decided to refer the matter to the FINRA examiner who had recently enquired about trading in Natural Blue's common stock. He sent the CD of the audio recording to her by FedEx.

6

Plaintiff also sent a copy of the recording to the former CEO and to Anaya. He heard nothing from FINRA or the SEC for more than a year later, when he was subpoenaed by the Commission's Boston Regional Office. By then, Plaintiff had closed his office and was moving abroad. Plaintiff arranged to testify by videoconference at the Miami Regional Office. The staff attorney was an elderly man named Rappaport. Plaintiff remembers that surname because, like the surname Cohen, it indicates the individual is from the tribe of Levi. Plaintiff, in obedience to the subpoena, had brought with him an additional copy of the audio recording.

During the deposition, it became obvious that the Commission believed that Plaintiff was complicit in the Natural Blue stock fraud, merely because he was the former CFO. Plaintiff convincingly showed that he had no knowledge of the fraud. When he proffered the audio CD as proof, the Commission staff were astonished. It was evident that the copy sent by Plaintiff in 2011 had been mislaid by FINRA or the Commission.

7

Later, according to the Commission's litigation releases, Cohen, Corezzi, Anaya and the former CEO were all the target of civil enforcement actions. Plaintiff's recording was the "smoking gun" critical in the matter.

Plaintiff believes that when the Boston Regional Office of the Commission realized that Plaintiff was innocent, staff was angry and decided to commence an investigation of Plaintiff. This investigation resulted in a civil enforcement action being brought by Martin Healey and a criminal proceeding being brought by Andrew Palid. The latter led to his arrest and conviction under Federal charges. Plaintiff's conviction is under appeal. He believes that he is innocent of the crimes and that his prosecution was retaliatory and vindictive.

Plaintiff seeks the requested information to shed light on the Commission's alleged malfeasance. Since the enforcement action on Natural Blue is long-since resolved, this information will not affect any pending investigation. But it could serve to exonerate an innocent man. He asks for a fee waiver as well.

/s/ John Hand
John Hand
06494-104
FCI Mendota
PO Box 9
Mendota CA 93640
October 1, 2020

8

John Haug
PO Box 2434
Lake Arrowhead
CA 92352

Clerk
US District Court
333 Constitution Ave
Washington DC 20001

